ELBERT N. WOOD *v.* CENTRAL VERMONT RAILWAY COMPANY.

November Term, 1914.                                    !

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Motion for Verdict—Exceptions—Waiver—Railroads—Accident at Crossing—Questions for Jury—Proximate Cause—Contributory Negligence.*

An exception to the overruling of defendant's motion for a directed verdict is waived by the subsequent introduction of evidence by defendant, and by plaintiff in rebuttal, without renewal of the motion.

In an action against a railroad company for damages to plaintiff's team by collision with a train on a grade crossing, *held*, on the evidence, that the questions of defendant's negligence in having the planking of the crossing lower than the rails, of proximate cause, and of contributory negligence were for the jury.

CASE for negligence. Plea, the general issue. Trial by jury at the June Term, Windsor County, *Slack*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Wallace Batchelder* for the plaintiff.

*J. W. Redmond* for the defendant.

WATSON, J. The defendant relies upon its exception to the overruling of its motion for a verdict. But a certified copy of the evidence and the proceedings of the trial, including the charge, is made a part of the bill of exceptions, on the motion for a directed verdict, and on the exceptions to the charge, numbered 1, 2, and 5, respectively, and is made to control. It appears therefrom that after its motion for a verdict was overruled and exception taken, the defendant introduced the testimony of two important witnesses touching the condition of the crossing in question at the time of the accident, and the plaintiff introduced further evidence in rebuttal, without the motion be-

ing subsequently renewed or brought to the attention of the court, or again ruled upon. This operated as a waiver by the defendant of its exception to the overruling of the motion. *Latremouille* v. *Bennington & R. Ry. Co.*, 63 Vt. 336, 22 Atl. 656; *Paine* v. *Webster*, 64 Vt. 105, 23 Atl. 615; *Noyes* v. *Parker*, 64 Vt. 379, 24 Atl. 12; *Swerdferger* v. *Hopkins*, 67 Vt. 136, 31 Atl. 156.

The case stands therefore on exceptions to the charge, and of these defendant relies upon numbers one and two only. The first of these is to the submission of the case to the jury at all, upon the ground that upon all the evidence, viewed in the light most favorable to the plaintiff, defendant was not negligent, and plaintiff was guilty of contributory negligence.

It appeared that on February 12, 1914, while the plaintiff's team, consisting of three horses harnessed to a pair of traverse sleds loaded with saw-logs, and driven by his son who was twenty years of age and had sole charge of the team, no one else being therewith, was proceeding from east to west along a certain public highway in the town of Royalton, and while the sleds were being drawn over a certain railway-crossing at grade on defendant's railroad, known as "Gifford's Crossing," the rear sled became stalled on the west rail of the track, the horses and the other sled having safely gone over the crossing; that plaintiff's son, after vainly trying to release the rear sled and to start the team, hearing the approach of defendant's regular northbound passenger-train which left White River Junction at 8:45, a. m., and was due at Royalton about 9:40, a. m., ran south along the railroad bed a distance of four hundred feet for the purpose of stopping the train; that he waved his hands in warning to the persons in charge of the train, but that, nevertheless, the train passed him, struck the rear sled, and stopped beyond the crossing; that the collision resulted in the death of one of the horses in a few days, the serious injury of another of the horses, and the substantial destruction of the sled and logs.

It further appeared that the crossing was twenty-four feet wide, and consisted of a plank on each side of each rail for that width, with the remainder of the space between the rails filled with gravel; that eight hundred ninety feet south of the crossing is a railroad bridge; that there is a curve in the railroad from a point about one hundred thirty rods southerly of the crossing up to the crossing; that there is a burying ground south of the

railroad bridge, and the curve in the track continues southerly of this burying ground; that from the crossing looking south it was about one hundred thirty rods to the curve near the burying ground, and one witness for the plaintiff testified that there was no obstruction to the view over this piece of the road between the crossing and the curve by the cemetery, especially in the winter time.

The driver of the team testified in direct examination as follows: "Q. Now, when you got to the crossing, what happened? A. I struck the rails and the horses stopped and could not draw. Q. Which set of sleds was it (that) struck the rails? A. The hind sled. Q. What if anything happened with reference to the brake chain, if you had one? A. It got caught between the plank and the rail. Q. Did you try to drive the team off from the crossing? A. Yes, sir. Q. And with what success—were you able to do it? A. No, sir, I wasn't. Q. What did you do? A. I tried to raise it up off the rails and found I couldn't. Q. With what did you try to raise it? A. With a canthook." In cross-examination, he testified that the brake chain was about three feet long, was attached to the sled beam, and the rest of the chain dangled on the ground; that just as the rear sled started on to the west rail, this chain dropped down between the rail and the plank, was caught there, and stalled the team on the crossing, and that was how the team happened to get stopped, and "the sled struck the rails, too"; that he tried to pry the chain out with a canthook, but found it was held fast by the sled being on it, and the rail held it there, but the runner had not gone on to the chain; that the runner struck the rail; that he had been drawing logs over this crossing substantially every day all winter, using the same team, same sled, same brake chain, and never before had any trouble; the chain did not catch, and so it was all right; that so far as he noticed, the crossing was in the same condition at the time of the accident as it had been all winter; that when the chain did not get caught, he went over the crossing all right, but when the chain did get caught, he did not go over all right. Benjamin A. Shattuck, called as a witness by plaintiff, testified that at one time for five or six years, off and on, he was a section man, and was section foreman for a short time, on defendant's railroad, and that this part of defendant's line was included in the section on which he worked; that he lives in Royalton and has occasion to pass and repass over the "Gif-

ford Crossing''; that he went over it a week or ten days before the accident in question, driving in a sleigh, and then noticed that the planks of the crossing were down about half an inch below the top of the rail—the runners of his sleigh hung on the east rail; that the west rail was in the same condition on the other side. In cross-examination he said that he went over the crossing "once or twice a week, sometimes not so much as that''; that he noticed the runners of his sleigh hung to the rails a number of times before the accident. William Penel, defendant's roadmaster and one of its witnesses, testified that the planks should be slightly above the rails at a crossing, to prevent the wheels of wagons and the runners of sleighs from coming in contact with the rails. Defendant's evidence tended to show that at the time of the accident the planks of the crossing in question were higher than the top of the rails.

There was a conflict in the evidence, therefore, as to whether at that time the top of the planks were lower than the top of the rails in defendant's track, by reason of which the runners of sleighs or sleds, drawn over the crossing, hit and hung to the rails, and it was for the jury to determine. If the alleged defect be found to exist, then it was the jury to say whether allowing it to be there as the evidence tended to show, was negligence on the part of the defendant. The defendant says, however, that on the undisputed testimony of the driver of the team, in cross-examination, the accident was not caused by the alleged defect in the crossing, but was proximately caused by the brake chain dropping down between the rail and a plank of the crossing, and that it should have been so ruled as a matter of law. The testimony of this witness in direct examination tended to show that the team was stalled on the crossing by the runners of the rear sled hitting the west rail of the track. This testimony was for consideration, as well as that given by him in cross-examination. For consideration therewith, was the condition of the crossing in the respect named, as the jury might find it to have been, and the other circumstances shown, so far as they shed light upon the matter. In a word, the question of proximate cause was to be determined upon all the evidence in the case bearing thereon, and was for the jury. *Milwaukee and St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. ed. 256; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159, 53 L. ed. 453, 29 Sup. Ct. 270; *Martin* v. *New York & N. E. R. Co..* 62 Conn. 339, 25 Atl. 239;

*Boothby* v. *Grand Trunk Ry.*, 66 N. H. 342, 34 Atl. 157; *New York & Boston Despatch Ex. Co.* v. *Traders & Mechanics' Ins. Co.*, 132 Mass. 377, 42 Am. Rep. 440.

Defendant further contends that on the undisputed evidence it was negligence in the driver to allow the brake chain to drag on the ground so that it could be, and was, caught between the rail and the plank, and that this negligence at least contributed to the stalling of the sleds, and consequently prevents a recovery in this action. But this could not be ruled as a matter of law. From the fact (brought out in the cross-examination of the driver) that at the time of the accident he had been drawing logs over the same road and crossing all winter, having the same team and sleds and brake chain, and that the chain never before the time in question got caught between the plank and the rails at the crossing, it may fairly be inferred that it was his custom to leave the chain dragging in the same way when not actually being used as a brake. The law has not established any rule of conduct in such cases, except the general one fixing the standard of conduct as that of a careful and prudent man. Whether it was acting with the requisite degree of care to allow this chain to drag on the ground when not actually in use under the runner of the sled, depended upon a variety of facts and circumstances, such as the kind and strength of the team, the weight of the load, whether the highway over which the team was passing, was one requiring its frequent use, or otherwise, the likelihood of its getting caught on something in the roadbed, materially affecting the draft of the load, etc. In such circumstances, the question of prudent and reasonable conduct was "one peculiarly for the consideration of a jury, depending upon experience, judgment, and discretion for its decision." *Hill* v. *New Haven*, 37 Vt. 501, 88 Am. Dec. 613; *Vinton* v. *Schwab*, 32 Vt. 612; *Selinas* v. *Vermont State Agr. Soc.*, 60 Vt. 249, 15 Atl. 117, 6 Am. St. Rep. 114; *Benedict* v. *Union Agr. Soc.*, 74 Vt. 91, 52 Atl. 110; *Howrigan* v. *Bakersfield*, 79 Vt. 249, 64 Atl. 1130, 9 Ann. Cas. 282. What we have said under this exception is also determinative of the second exception to the charge.

*Judgment affirmed.*