ARTHUR J. ELWELL *v.* BARROWS COAL COMPANY, INC.

October Term, 1926.

Present: WATSON, C. J., POWERS, SLACK, and FISH, JJ., and MOULTON, Supr. J.

Opinion filed February 2, 1927.

*Necessity of Stating Ground of Motion for Directed Verdict Below—Requested Instruction Embodying Claims Contrary to Record—Requested Instruction Too General—Requested Instruction Assuming as True Matter in Controversy—Necessity of Saving Exception to Court's Failure To Charge—Limitations of Right of Driver To Rely on Another's Obedience of Law.*

1.  Reason assigned in brief as ground of motion for directed verdict, but not shown by record to have been assigned when motion was made, will not be considered on review by Supreme Court.

2.  In action by husband for loss of wife's services, and expense incurred, in consequence of injury to her in automobile collision, alleged to have been caused by defendant's negligence, grounds assigned on motion for directed verdict beginning with statement, "Because the plaintiff seeks to recover in the right of, and for injury to, his wife," will not be considered, being fundamentally contrary to record in that plaintiff declared upon cause of action which arose at common law to him personally.

3.  In such action, defendant's requested instruction that driver of defendant's car was not required to extend his observation beyond a point where vehicles moving at a lawful rate of speed would threaten his safety, *held* properly refused as too general.

4.  In such action, requested instruction as to obligation of driver of defendant's truck, assuming as true a fact in controversy for the jury to decide, *held* properly refused.

5.  Whether or not court was bound to charge on subject-matter of request without being asked so to do, is not for consideration by Supreme Court, where exception saved was put upon another ground.

6.  Where driver of a truck knew that another car was approaching, he had no right to rely upon assumption that it was proceed-

ing at lawful rate of speed beyond time when he saw, or in circumstances ought to have seen, that it was not, or would not be, true, and requested instructions as to his right to rely on other driver's obedience to law, not embodying such limitation, was rightly refused.

ACTION OF TORT for negligence. Plea, general issue. Trial by jury at the December Term, 1925, Bennington County, *Chase,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Chas. H. Darling* for the defendant.

*Holden & Healy* for the plaintiff.

STATEMENT BY CHIEF JUSTICE WATSON: This is an action of tort charging the defendant with negligence of its servant in so running a motor truck on the public highway in the village of West Brattleboro about nine o'clock in the forenoon of the 29th day of July, 1925, as to cause a collision with the automobile (a Maxwell touring car) then and there owned and being driven by David Crichton, in which the plaintiff's wife, Alice Elwell, was riding as the invited guest of said Crichton, resulting in her injury.

It appeared that on the day named David Crichton (a man 44 years old) started from Bennington in the early morning with a party consisting of his wife and two children and Mrs. Elwell to visit Camp Takoda in Richmond, New Hampshire; that the road from Bennington to Brattleboro curves just as it enters the village of West Brattleboro, but, after passing that curve, it runs straight on a course nearly east and west through West Brattleboro.

It further appeared that the defendant, Barrows Coal Company, which conducts a coal business in Brattleboro, was, by use of a 1½ ton motor truck, delivering coal at the school house in West Brattleboro; that the driver of the truck, Alfred J. Bell, was defendant's employee taking a load of coal from Brattleboro to said school house which was on the south side of the street— not on any intersecting street. The evidence on the part of the plaintiff tended to show that in so doing the driver of the truck was proceeding near the center, or on his right-hand, or the north side, of the traveled portion of the highway, and conse-

quently it was necessary for him to make a left-hand turn and cross the street to the school house; that the traveled portion of the street along there was 25 or more feet wide, and the view was open and unobstructed for a distance of 150 to 200 feet from the point of collision toward Bennington; that the Maxwell car in which the plaintiff's wife was riding ran into the right-hand side of the truck, as the latter was crossing the street toward the school house, striking it a little back of the middle; that as the Maxwell came round the curve (before mentioned) in the road, the driver of that car saw the truck coming from the opposite direction it being "then probably 300 or 400 feet from the curve," and probably 150 feet or a little more from the place of the accident; that the driver of the Maxwell car was running it on his right-hand side of the road, at a speed of twenty miles an hour, and he saw the truck coming up the highway on his left; that the driver of the truck, before changing its direction or materially slackening its speed, did not signal with bell or horn, nor give warning of his intention so to do with any hand signal; and the driver of the Maxwell did not see nor hear anything indicating an intention by the driver of the truck to change his direction or to cross the road in front of the Maxwell, and the first thing that came to the attention of the driver of the latter car, indicating that the truck was going to pass, or attempted to pass, in front of the Maxwell, was when he noticed the front or engine part of the truck in front of him, but a short distance, probably ten or twelve feet away; that after he first saw the truck coming from the opposite direction; he watched it "going right along all the way," was looking straight ahead; that the truck first veered to its right, and was not seen by the driver of the Maxwell when it turned to the left, because he was looking straight ahead and had no indication that it was going to make the turn; that on discovering that the truck had turned to the left, the driver of the Maxwell applied the brakes to his car just as soon as he could and tried to avoid collision by turning the car to the left, but it was so far over on the right-hand side of the road that it could not be got around far enough to avoid a collision, and it hit the truck on an angle about in the center.

The truckman, improved as a witness by the defendant, testified that he began to turn the truck to cross the street to the school house about fifty feet back from the place of crossing; that from where he thus began to turn he observed that the road

ahead was clear for a distance, he should say, of four hundred feet; that the speed of the truck up to that time was 15 to 18 miles an hour, but when he neared the place of making the turn he signalled with his left hand, threw his car into second speed —six or eight miles an hour—and continued across the road without increasing that speed; that in making the crossing he was looking where he was going to his left; that he continued on his route until within eight feet, perhaps, when he saw the Maxwell car coming very rapidly, it then being within a hundred feet of him, but he continued, thinking he would get to his point; that the next that occurred the truck was run into by the Maxwell.

On cross-examination this witness testified that when the truck was struck, its forward wheels were just off the hard-surface road, and that the rear end of the truck was just about center of the road; that on or about August 12, 1925, he signed a report to the Secretary of State, concerning the accident. "Q. Did you say in that statement this, or substantially this: 'On July 29 at nine o'clock a. m. I was going to deliver a load of coal to the West Brattleboro School and was proceeding west on Western Avenue and about to turn to enter the school yard when I saw the Maxwell touring car coming about 150 feet to the west,' did you sign a statement with that in it? A. That is where I saw him. Q. Did you sign a statement with that in it? A. I did. Q. And was that true? A. That is true. Q. And then it is true that you were about to make the turn when you saw the Maxwell car? A. I had made my turn. Q. I will ask you again if you signed a statement on or about the 12th day of August saying substantially that you were about to make the turn to enter the school yard when you saw the Maxwell touring car coming? A. Yes. Q. Was that true? A. That is true."

Verdict and judgment for the plaintiff. Defendant brings up the case for review.

WATSON, C. J. [1] At the close of the evidence, the defendant moved for a directed verdict on nine different grounds, assigned in that number of different paragraphs. In its brief defendant says it "moved for a directed verdict for the following, among other, reasons: * * *." Then are given three reasons, the first of which is not found among those in fact assigned

at the time the motion was made. This being so, the reason now thus assigned is not further noticed.

[2]   The second ground now assigned is "That the plaintiff's wife was not shown to be free from contributory negligence." The ground thus now stated is substantially the last part of grounds 2 and 3 as originally assigned; but those assigned grounds begin with the statement: (2) "Because the plaintiff seeks to recover in the right of, and for injury to, his wife," etc., (3) with substantially the same statement. These statements were fundamentally contrary to the record. The plaintiff does not in this action seek to recover "in the right of his wife," nor "for injury" to her. The plaintiff declares upon the cause of action which arose at common law to him personally for the loss of his wife's services, the expense, etc., in consequence of the injury to her caused by the alleged negligence of the defendant's servant on the occasion in question. *Whitcomb* v. *Town of Barre*, 37 Vt. 148; *Earl & Wife* v. *Tupper*, 45 Vt. 275; 13 R. C. L. 1434; *Mageau* v. *Great Northern Ry. Co.*, 103 Minn. 290, 115 N. W. 651, 946, 15 L. R. A. (N. S.) 511, 14 Ann. Cas. 551; *Blaechinska* v. *Howard Mission and Home*, 130 N. Y. 497, 29 N. E. 755, 15 L. R. A. 215.

The third ground now assigned is: "It was not shown that the defendant or the driver of the truck was negligent." This ground was not assigned in the motion for a directed verdict as made, and passed upon by the trial court. It is therefore not considered.

The defendant filed certain requests to charge, numbered from 1 to 11 inclusive, and in its brief asserts and relies upon the failure of the court to comply with the 5th, 7th and 9th of them.

[3]   The 5th was, "That the driver of the defendant's car was not required to extend his observation beyond a point where vehicles moving at a lawful rate of speed would threaten his safety." The language of this request was broad enough to cover all kinds of "vehicles," having a lawful rate of speed, whether outside or within a city, incorporated village or the thickly-settled part of a town, in which the lawful rates of speed are different (See section 86, No. 70, Acts of 1925), or a tractor or motor truck, carrying more than a limited weight, upon any highway or bridge at a rate of speed limited to ten miles an hour when such vehicle is equipped with iron or steel tires (See sec-

tions 79, 112, 113). This request was too general, and there was no error in disregarding it.

[4, 5] The 7th request was: "If at the time the driver of the defendant's truck started to cross the street there was no one approaching the place of the proposed crossing, within such distance as reasonably to indicate danger or interference, or collision, the driver of the truck was under no obligation to stop or wait, but might proceed to cross the street as a matter of right."

In effect this request presupposes, as true, a certain material fact in controversy, namely, that "there was no one approaching the place of the proposed crossing, within such distance as reasonably to indicate danger or interference or collision." This was a question for the jury to determine on the evidence. The request does not say, "If the jury shall find on the evidence that at the time," etc. There was no error in refusing to charge as thus requested. But it is said the court was bound to charge on the subject-matter of the request without being asked so to do. Whether this be so or not, the exception saved was not put upon that ground, and the question is not before us.

The ninth request: "It was the duty of the driver of the Maxwell car to have his car under control while going through this thickly-settled part of a town, and proceed at a lawful rate of speed, and the driver of the truck had a right to rely upon the assumption that he would do so.

[6] The statement contained in the report of the accident to the Secretary of State, signed by the driver of the truck and by him, in cross-examination, asserted to be true, shows that when he was about to make the turn to enter the school yard, he saw the Maxwell car coming about 150 feet to the west. Thus knowing that car to be approaching, the law gave him no right to rely upon the assumption that it was proceeding at a lawful rate of speed beyond the time when he saw, or in the circumstances ought to have seen, that it was not, or would not be, true. As the case stood on the evidence, the request under consideration, without such limitation, was unsound in law and rightly refused. *Hatch* v. *Daniels*, 96 Vt. 89, 117 Atl. 105; *Dumont* .v. *Cromie*, 99 Vt. 208, 130 Atl. 679.

*Judgment affirmed.*