Anna Mooney *v.* Joseph H. McCarthy et al.

May Term, 1935.

Present: Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed October 1, 1935.

*Clayton H. Kinney* and *Stanley L. Burns* for defendant McCarthy.

*Novak & Bloomer* for the plaintiff.

SLACK, J. This is an action in tort to recover for personal injuries plaintiff received in an automobile accident. McCarthy was charged with ordinary negligence, Gould with gross negligence; there was a verdict and judgment against both, and the case is here on McCarthy's exceptions.

The accident happened on Main Street in the village of Wallingford about 7.45 p.m. April 21, 1934. The street runs north and south. McCarthy, hereafter called the defendant, lives east of it. There is a driveway from the street to his place which passes over a cement culvert about 11 feet 9 inches long and 2½ feet above the ditch or gutter. The west side of this culvert is between 5 and 6 feet from the east side of the traveled roadway, which is 17 feet wide at that point. Defendant was on his way home, in his car, from some place south of his driveway. Gould was 50 or 60 feet behind him driving his car in the same direction. The plaintiff, an invitee of Gould, was riding in the right front seat of his car. As defendant neared his driveway, he turned his car to the west, his left, of the center of the street

for the purpose of turning back at his driveway and thus approaching the culvert in a more nearly straight course. After he had turned to his left so far that the east side of the street was clear, Gould attempted to pass him on that side, defendant's right. When defendant started to turn east to enter his driveway, he saw Gould's car, which was nearly opposite him, and immediately turned west again. Gould saw defendant start to turn east and to avoid hitting him swung his car to the east, and his right front wheel struck the south side of the culvert and wrecked the wheel, but the car proceedel on its course until the front end dropped into the ditch at the north end of the culvert, leaving the rear end on the culvert. The plaintiff was thrown against the windshield and forward end of the car, and her head, shoulder, chest, and legs were injured.

██ ██ She has had pulmonary tuberculosis for some years and was in the Pittsford Sanatorium most of the time from November 6, 1930, to May 14, 1933. When she left there the disease was quiescent or dormant, and continued so to the time of the accident. Doctor Rodgers who cared for her while she was at the sanatorium testified that he saw her December 15, 1933; that she then had no fever, cough, or expectoration; was twenty-five pounds heavier than when she went to the sanatorium, and "seemed to be doing well." The evidence regarding her injuries was such that defendant requested the court to charge the jury, in substance, that there was not sufficient evidence upon which they could find that there would be a recurrence of the tubercular trouble and, therefore, if their verdict was for plaintiff, they should not consider such condition as an element of damages, and to its failure so to do excepted. The scope of this request should be noted. It questions the sufficiency of the evidence as tending to show the likelihood of a recurrence of plaintiff's tubercular trouble, and not its sufficiency to show as a basis for damages the extent, duration, or probable outcome of such trouble, if it recurred.

The evidence concerning this came from the plaintiff and Doctor Rodgers. The plaintiff testified that following the accident she began coughing again, lost weight, and had pain in her lungs. The doctor testified regarding plaintiff's condition at different times during the summer following the accident, that the first time he saw her she was suffering from the shock of the accident; that a traumatic injury or shock was liable to reawaken her tubercular trouble; that she grew worse rather than

better; complained of coughing more; lost considerable weight; on October 6 had rales, a sound in the lungs detectable by the use of a stethoscope, to which doctors attach great significance; and that the general outlook was not good—was bad. In the course of his testimony he said, as claimed by defendant, that he had not yet "any positive opinion that it (the disease) has begun to be active, but more a very definite fear that it may begin"; but he testified that such fear was based on his judgment and experience. He testified, too, on cross-examination, that he had no definite evidence that a pulmonary change had taken place, and that whether or not one would was entirely speculation. But in answer to the next question, which was: "Q. It is merely a matter of speculation, she may start getting better any time or start getting worse any time, that is about the way it is?" he modified his previous answer thus: "I would say more a matter of judgment than just a rank speculation." Later he testified that he wished to see how she got through the coming winter. He was then asked and testified as follows: "Q. You haven't any judgment now as to what that will bring forth have you? A. Yes, I have quite a bit of judgment. Q. What is that? A. I have quite a bit of judgment * * * as to what it will bring forth."

It thus appears that while some of the doctor's testimony, standing alone, supports defendant's claim, taken as a whole it does not. Although he did not state positively that it was his judgment that there would be a recurrence of the disease, the evidence clearly justified the inference that such was his belief. The situation is materially different from that presented in *Howley* v. *Kantor,* 105 Vt. 128, 163 Atl. 628, and *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 129 Atl. 317, cases relied upon by defendant. Undoubtedly the verdict included damages for future disability due to a recurrence of the tubercular condition. But whether the evidence as to what might be expected to happen, if a recurrence took place, was sufficient to form a basis for damages we do not consider for reasons already stated. The exception is not sustained.

█ The court charged the jury, in effect, that a person operating a motor vehicle upon a highway has a right to assume that others using the highway will act in a prudent manner and obey the laws, until in the exercise of the care of a prudent man he sees, or ought to see, that such is not going to be the case, but that this rule "does not apply to one who at the time

he wishes to make the assumption or does make the assumption is himself not in the exercise of the care and prudence of a prudent man." The defendant excepted to that part of the charge which we have quoted on the ground that "even though a man may violate some law, he still has a right to assume that other operators will comply with the law until in the circumstances he is not warranted in relying on that presumption." None of the cases cited by defendant in support of his contention, *Hatch* v. *Daniels*, 96 Vt. 89, 117 Atl. 105; *Lachance* v. *Myers*, 98 Vt. 498, 129 Atl. 172; *Dumont* v. *Cromie*, 99 Vt. 208, 130 Atl. 679, present the question now raised. They merely state the general rule that a traveler upon the highway has the right to assume that other users thereof will act in a prudent manner and observe the law until in the exercise of due care he sees, or ought to see, that they are not going to do so. This is all that was required in those cases. In *Porter* v. *Fleming*, 104 Vt. 76, 156 Atl. 903, it was said, in considering the claimed contributory negligence of plaintiff that his care and diligence was to be measured in view of the assumption that defendant would exercise the care which the law required of him. And in *Steele* v. *Fuller*, 104 Vt. 303, 158 Atl. 666, we held that one whose own conduct, at the time, fails to measure up to that of a careful and prudent person is not favored with such assumption. The charge complained of goes no farther. It does not rest on the question of whether or not defendant was violating some law at the time he was entitled, if at all, to make the assumption, as he argues, but upon the question of whether he was then in the exercise of the requisite care and prudence. This is a wise and salutary rule. The exception is without merit.

█ The court charged the jury as to the signals the law required defendant to give before turning either way as follows: "Another provision is that, 'A person before turning or slackening his speed shall give such hand signal as may be prescribed by the Commissioner of Motor Vehicles, or shall give such signal with a mechanical device which may be approved by the Commissioner of Motor Vehicles.' While there has been some evidence in this case that the McCarthy car was equipped with a signaling device or mechanical device, the evidence is that such device was not approved by the Commissioner of Motor Vehicles." This was excepted to on the ground that the question for the consideration of the jury was whether the type and kind of light with which defendant's car was equipped had been

approved by the commissioner, and not whether his particular light had been so approved; that plaintiff had the burden of showing that defendant's light was not a type and kind of lighting device approved by the commissioner, and that no evidence was produced regarding this. This exception must be sustained. If the court referred to the device on defendant's particular car when it said "the evidence is that such device was not approved" etc., as it apparently did, the charge was erroneous because it is manifestly the type or kind of device for use in general which the statute requires the commissioner to approve, and not the device on a particular car. If in the use of such language the court referred to the type or kind of device for general use, the charge was equally faulty, since there was no evidence to support it, and plaintiff had the burden of proof on this issue. In other words, if the device on defendant's car was of a type or kind that had been approved by the commissioner, concerning which there was no evidence, he had to that extent met the requirement of the law. Whether such device was in condition to do what was expected of it was a different question, not raised by the exception under consideration.

■ The jury returned a verdict against both defendants, naming them, for $6,500 damages. Accompanying the verdict was a slip of paper, apparently in the handwriting of the foreman, which reads: "Father McCarthy $1,750.00, John Gould $4,750.00." Defendant is a Catholic priest and was referred to during the trial as Father McCarthy. The slip returned with the verdict was not called to the attention of defendant's counsel until after the verdict had been received and the jury had been discharged from further service in the case. As soon as he learned of it, and before judgment, he moved to set aside the verdict on the ground, among others, that it was contrary to the charge of the court, and that the general verdict was contrary to, and failed to express, the intention of the jury as appeared by the paper returned therewith. The motion was denied, and judgment entered against each defendant for the full amount of the general verdict, to which this defendant excepted. This is a new question in this jurisdiction and one upon which the authorities elsewhere are hopelessly divided. In *Nashville R. & Light Co.* v. *Trawick*, 118 Tenn. 273, 99 S. W. 695, 10 L. R. A. (N. S.) 191, 121 A. S. R. 996, 12 Ann. Cas. 532, a suit by plaintiff in error against the railroad and light company and the city of Nashville, the verdict was against both defendants for $7,250; $7,000

awarded against the railroad and light company and $250 against the city. The plaintiff moved, and was allowed, to dismiss as against the city, and took judgment against the other defendant for the full amount. This procedure was approved, but the judgment was reduced to the amount of the verdict against the railroad and light company. It is there said that there are four distinct lines of procedure recognized by the courts in such cases. The first class holds that the verdict should be set aside and a new trial granted. The second treats the attempt of the jury to apportion the damages as mere surplusage, and the plaintiff may take judgment against all defendants for the total damages awarded. A third holds that plaintiff may elect his best damages, that is, the highest amount awarded against any of the defendants, and enter judgment therefor against all of those found guilty; and the fourth class —said to be supported by the greatest weight of authority— holds that plaintiff may elect which of the defendants he will take judgment against, dismiss as to the others, and have his judgment against this one for the amount the jury award against him. Among the cases that hold that the verdict should be set aside and a new trial awarded are: *Rathborne* v. *Detroit United R. Co.,* 187 Mich. 586, 154 N. W. 143; *Glore* v. *Akin,* 131 Ga. 481, 62 S. E. 580; *Whitaker* v. *Tatem,* 48 Conn. 520, 521, and *Birmingham* v. *Hawkins,* 196 Ala. 127, 72 So. 25. Among the cases of the second class are *Lake Erie & W. R. Co.* v. *Halleck,* 78 Ind. App. 495, 136 N. E. 39; *Currier* v. *Swan,* 63 Me. 323; *Post* v. *Stockwell,* 34 Hun. (N. Y.) 373; *San Antonio & A. P. R. Co.* v. *Bowles,* 88 Tex. 634, 32 S. W. 880, affirmed in *Houston & T. C. R. Co.* v. *Bowles,* 168 U. S. 706, 18 Sup. Ct. 943, 42 L. ed. 1213; and *Hall* v. *McClure,* 112 Kan. 752, 212 Pac. 875, 30 A. L. R. 782, where the court divided four to three on this question. It will be noted that neither of the other two courses of procedure above mentioned sanction such a judgment as was entered in this case.

It is thus seen that except the few cases that treat the attempted apportionment as surplusage, all the authorities hold that in such cases a new trial should be granted, or that this should be done, unless the irregularity in the verdict is cured by some one of the methods pointed out.

While the attempted apportionment in the instant case appears on a separate slip of paper, such slip was returned with the general verdict and indicates as clearly what the jury in-

tended, as though the language thereof had been embodied in such verdict. It does not seem that any reasonable person should entertain a doubt that the jury intended to limit this defendant's liability for damages to $1,750.00. We do not. Yet judgment was entered against him for nearly four times that amount. Had the jury understood that their verdict made this possible, it cannot be supposed that it would have been in the form that it was. In the circumstances, we think the judgment a rank injustice against him. This exception is sustained the judgment and verdict are set aside, and a new trial is granted. Consideration of other exceptions saved is unnecessary.

*Judgment reversed, and cause remanded.*