### BENJAMIN HATCH *v.* EARL DANIELS.

#### February Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion field May 8, 1922.

*Negligence—G. L. 4709—When Violation of Statute Actionable Negligence—Burden of Proof—Proximate Cause—Questions for Jury—Contributory Negligence—Right to Assume That Driver of Approaching Automobile Will Obey the Law—Sudden Peril—Direction of Verdict.*

1. In an action for injuries to person and property in an automobile collision, *held* that there was evidence from which it could be inferred that defendant had deliberately violated G. L. 4709 by turning off the lights of his automobile and leaving it unattended in the highway after dark.

2. The violation of a statute does not constitute actionable negligence, unless it was a proximate cause of the accident for which recovery is sought.

3. In an action for injuries to person and property by collision with defendant's automobile, which defendant had left standing in the highway after dark, unattended, with its lamps not burning, plaintiff has the burden of proving that defendant's negligence was the proximate cause of the injuries.

4. Proximate cause may be proved by either direct or circumstantial evidence, from which a logical inference of causal relation can be drawn.

5. Where the evidence was such that the jury could infer therefrom that the plaintiff had been misled by the fact that the lights of defendant's automobile were not burning until too late to avoid colliding with it, and that had they been lighted he would have sooner discovered defendant's car and have been better able to judge whether it was stationary or in motion, it was for the jury to say whether the absence of the lights was the proximate cause of the accident, and was error to direct a verdict for defendant on the ground that his negligence had not been shown to be the proximate cause of the accident.

6. Where the evidence showed that plaintiff when rounding a curve saw defendant's unlighted automobile in the highway as soon as he ought to have seen it and in plenty of time to have avoided it, whether plaintiff was negligent in erroneously assuming, until too late to avoid the collision, that the car was approaching and would turn to its right was for the jury to determine under all the circumstances.

7. The driver of an automobile along a public highway, who sees another automobile approaching on the wrong side of the road, has a right to assume that it will observe the law of the road (G. L. 4705) and move over to its right so as to pass without interference, and to proceed on this assumption until he sees, or in the circumstances ought to see, that it is unwarranted.

8. Under the evidence, *held* that the plaintiff was not guilty of contributory negligence as a matter of law in not sooner discovering that defendant's automobile was not in motion.

9. When one without his own fault is confronted with a sudden peril, he is not held to the exercise of the same degree of care as when he has time for reflection, as the law recognizes that a prudent man, under such circumstances, may fail to use the best judgment or may omit some precaution he could have taken.

10. What a prudent man would or might do in the same circumstances when confronted with a sudden peril is a question for the jury, and such an emergency having been shown by the evidence, it was error to direct a verdict for the defendant on the grounds of plaintiff's contributory negligence.


ACTION OF TORT for negligence in leaving an unlighted automobile in a public highway after dark. Plea, the general issue. Trial by jury at the September Term, 1921, Washington County,

*Moulton*, J., presiding. At the close of plaintiff's evidence the court directed a verdict for the defendant. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*F. L. Laird* and *H. C. Shurtleff* for plaintiff.

*Fred E. Gleason* for defendant.

POWERS, J. In the evening of November 13, 1920, the plaintiff was driving his automobile from Adamant to Montpelier. When he rounded the curve in front of the dwelling of G. E. Anderson in East Montpelier, the defendant's Ford car was standing in the highway with its engine running and lights out. It was headed toward Adamant, and stood a little to its left of the middle of the road. When the plaintiff's car completed the curve and its lights shone down the straight road, he discovered the defendant's car, but thought it was coming toward him and acted accordingly. He took his foot off the accelerator, applied his foot brake, and turned out to his right. When he first saw the defendant's car, he was about 133 feet from it, and was driving 18 or 20 miles an hour. As he turned out, he slowed down to 14 or 16 miles an hour, and being mindful of a bank which dropped off several feet on the right side of the road, he watched out for it lest he should turn out too far. When he reached a point 25 or 30 feet from the standing car, he discovered it was not moving and that a collision was imminent. He immediately applied his foot brake in an attempt to stop his car—applied it so vigorously that his rear wheels slid for a distance of eight feet or more. His car slowed down to 10 miles an hour, but did stop. It collided with the defendant's car, and was thrown over the bank and wrecked. This suit was brought to recover for the damages to his car and the injuries to his person that resulted. At the close of the plaintiff's evidence below, a verdict was ordered for the defendant, and the plaintiff excepted.

[1] That there was evidence tending to establish the negligence charged against the defendant is too plain for denial. G. L. 4709 requires automobiles in use or at rest upon a highway after dark to display at least two lamps in front, and G. L. 4718 penalizes the noncompliance with this provision. We need take no time with the defendant's explanation of how his lights came to be out, for there was testimony tending to show that they had

been turned off, and the car left unattended in the road. This. testimony comes quite largely from the defendant, himself. He testified that his car was so constructed and equipped that his headlights would burn only when the engine was running; that the wiring was such that if one of these lights went out, the other would; but if one light became disabled and went out, the other could be made to burn by "grounding" a certain wire on the frame of the car. Several witnesses testified that after the accident, when the defendant's car was "cranked up," one of the headlights came on and burned. The defendant denied this, to be sure, but the jury might have believed it, and from it might have inferred that the wire had been grounded as above before the collision, and that the defendant had turned off the one light that would burn. No other way of preventing the light from burning when the engine ran is suggested by the record, assuming, of course, that it came on as above.

Then, too, some of the witnesses testified that they saw no one in the defendant's car at or before the time of the collision. Of course this was not conclusive that there was no one then in the car, but in the circumstances shown, the jury might think that if any one was in the Ford, some one in the plaintiff's car would have seen him and conclude that the car in fact was unoccupied. So there was credible evidence tending to show a deliberate violation of the statute referred to.

[2]   But even so, it does not necessarily follow that the defendant's negligence was actionable. The violation of the statute would be of no consequence here, unless it was a proximate cause of the accident sued on. *Hoadley's Admr.* v. *International Paper Co.*, 72 Vt. 79, 47 Atl. 169; *Corbin* v. *Grand Trunk Ry. Co.*, 78 Vt. 458, 63 Atl. 138; *Dervin* v. *Frenier*, 91 Vt. 398, 100 Atl. 760; *Gilman* v. *Central Vermont Ry. Co.*, 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102. In other words, the statute avails the plaintiff nothing, unless the lack of lights was a proximate factor in the collision. *Carlton* v. *Boudar*, 118 Va. 521, 88 S. E. 174, 4 A. L. R. 1480.

[3-5]   As presented by this record, the question of proximate cause was one of fact, and the burden of proof was on the plaintiff. It was not necessary, however, that this fact should be proved by direct and positive testimony. It was enough, if there was evidence, direct or circumstantial, from which a logical inference of the causal relation could be drawn. It may be ad-

mitted that there was no direct evidence thus connecting the absence of lights with the accident. The plaintiff did not testify that he was thus misled. Yet, the circumstances were such that the jurors, as practical men of affairs, well might infer this fact. It is reasonable to assume from the situation disclosed by the record, that if the defendant's headlights had been burning, the plaintiff would have sooner discovered that there was a car in the road, and would have been the better enabled to judge whether it was standing still or approaching. It was for the jury to say how this would be.

[6] It was also necessary for the plaintiff to give evidence that he was in the exercise of due care at the time. As we have seen, the plaintiff discovered the defendant's car when it was 133 feet away. It is not suggested that he did not discover it as soon as his lights picked it up, but it is said that he rounded the curve too fast. But if he did, it had nothing whatever to do with the discovery of defendant's car. The record discloses nothing to indicate that the plaintiff ought sooner to have seen it. When he did see it he had plenty of time to avoid it. But he made the mistake of assuming that it was approaching him. Surely it cannot be said as matter of law that this was negligence. It was at least a question for the jury. Whether a prudent man would or could reach this conclusion depended upon various circumstances; the very fact that the car was there afforded some basis for the assumption that it was moving or would move in time to get on to its own side of the road; the appearances caused by the reflection of the plaintiff's lights on the vibrating glass of the defendant's car; the improbability that a driver would stop his car in the dark on the wrong side of the road—these were some of the circumstances to be considered in deciding whether the plaintiff lost his standing as a prudent man when he concluded that the defendant's car was coming toward him. It is of some significance that one of his passengers got the same impression about the standing car. How did the plaintiff meet the situation as he understood it?

[7, 8] One thus driving an automobile along a public highway who sees a car approaching on the wrong side of the road, has, at the outset, a right to assume that it will observe the law of the road (G. L. 4705), and seasonably move over to its right so as to pass without interference; and he may proceed on this assumption until he sees, or in the circumstances ought to see,

that it is unwarranted. This is an application of the rule that ordinarily one may regulate his own conduct on the assumption that others will act reasonably and lawfully. But this presumption must not be persisted in after the actor knows facts showing that it will not be true. So when this plaintiff saw, or ought to have seen, that this car would not get out of his way, he was bound to look out for himself, and to exercise the care of a prudent man, not only to avoid injuring others, but also to protect himself from injury. That he acted promptly and prudently to meet the situation as he understood it cannot be denied. He shut off his power, applied his brake, and turned out to his right. His car slowed down to a speed well under the requirements of G. L. 4705. He turned out so far that his right wheels were running on the narrow fringe of grass on that side of the road. When he discovered that the car he was approaching was not in motion, he was thirty feet away. The defendant says that the plaintiff should have sooner discovered that the Ford was at rest, and that his failure in this respect was negligence. Perhaps so, but not as matter of law. The plaintiff could not give his undivided attention to the defendant's car. He had a bank with a dangerous drop off to look out for. Plainly, it was a question for the jury whether he discovered that the Ford was standing still as soon as a prudent man in his situation would have discovered that fact. When he did discover it, he yet had time to avoid a collision by turning sharply to the left and passing it on that side. But on the evidence, he was confronted with an emergency; one due wholly to the defendant's negligence, and not at all to his own. At least, the jury could so find. He had about one and one-fourth seconds in which to decide what to do and do it. There was no time for deliberation or balancing expedients. He chose to stop, which he could have done in the space left him, had the conditions been normal. But the grass on which his right wheels were running was frosty and slippery, and though his brakes held well, his wheels slid.

[9, 10] When one is confronted with a sudden peril, as the plaintiff was, he is not held to the exercise of the same degree of care as when he has time for reflection. *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, 52 Atl. 531, 93 A. S. R. 887; *Griffin* v. *Boston & Maine R. R.*, 87 Vt. 278, 89 Atl. 220; *Sanderson* v. *Boston & Maine R. R.*, 91 Vt. 419, 101 Atl. 40. The law recognizes the fact that a prudent man, so brought face to face with

an unexpected danger, may fail to use the best judgment; may omit some precaution he could have taken; may not choose the best available method of meeting the dangers of the situation. *Centofanti* v. *Pennsylvania R. Co.*, 244 Penn. 255, 90 Atl. 558; *Cole Motor Car Co.* v. *Ludorff*, 61 Ind. App. 119, 111 N. E. 447; *Pennsylvania R. Co.* v. *Snyder*, 55 Ohio St. 342, 45 N. E. 559, 60 A. S. R. 700; *Moore* v. *Maine Central R. Co.*, 106 Me. 297, 76 Atl. 871. In such circumstances, the doctrine of the last clear chance is inapplicable—if, indeed, it is ever available against a plaintiff. When one, without his own fault but through the negligence of another, is so situated, he is not ordinarily, if ever, chargeable, as matter of law, with contributory negligence, if, in attempting to escape the danger, he makes a mistake in the method adopted. The question is, what would or might a prudent man, in the same circumstances, do (*Mayer* v. *Malette*, 65 Ind. App. 54, 114 N. E. 241, 20 R. C. L. 135), and this question is for the jury. 1 Thomp. Neg. §§ 195, 441; *Alabama Great Southern R. Co.* v. *Hunt*, 204 Ala. 504, 86 So. 100; *Westcoat* v. *Decker*, 85 N. J. Law, 716, 90 Atl. 290; 20 R. C. L. 134-5; *Kilpatrick* v. *Grand Trunk Ry. Co., supra; Griffin* v. *Boston & Maine R. R., supra.* We hold, then, that the case was for the jury on both questions and that it was error to direct a verdict for the defendant.

*Judgment reversed and cause remanded.*