**BUDD v. JOHN B. SOUTHEE, Inc.**

**No. 387.**

Circuit Court of Appeals, Second Circuit.

Aug. 13, 1936.

Carter & Conboy, of Albany, N. Y., for plaintiff-appellee.

Brown & Gallagher, of Albany, N. Y. (Leslie J. Schuyler, of Syracuse, N. Y., of counsel), for defendant-appellant.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, a resident of Connecticut, brought this suit against John B. Southee, Inc., a New York corporation, after a collision between his automobile and the defendant's truck on a highway in Massachusetts in which the plaintiff was injured and his automobile damaged. Though the appellant was not originally the sole defendant, it is now. Jurisdiction is based on diversity of citizenship.

The defendant's truck, 7 feet wide and 9 high, was being driven by one of its employees, Foote, who had an assistant with him, in an easterly direction along the three-strip concrete highway leading down Lebanon Mountain in Massachusetts toward Pittsfield a little after 1 o'clock on the morning of January 27, 1934, when the driver saw ahead of him the headlights of a car which was apparently in trouble. The weather was cold and the road rather slippery because of snow and ice. There was some disputed testimony that it was also foggy. Upon seeing the lights ahead, Foote stopped his truck at least on the right of the three concrete strips, and there was evidence that he pulled over onto the right shoulder of the highway to within about a foot and a half of a highway fence there. The concrete strips composing the traveled part of the road were each 10 feet wide, and the shoulders on either side of the concrete were 3 or 4 feet wide. From the place where Foote parked the truck, the road was straight back in the direction from which he had come for a considerable distance. After parking, Foote and his helper walked down the road and found that the headlights they had seen were those of a semitrailer truck which had slipped diagonally across the road in trying to get up the mountain from the east. They then helped the driver of that truck by throwing chains under the rear wheels to enable him to start on. After that truck started, they continued to help, and it kept on going slowly up the mountain until it had gone on about 1,000 feet beyond where the defendant's truck was parked. Before it got opposite that truck one car came down the mountain and passed. When the rear of the upbound truck was about 20 feet beyond the rear of the defendant's truck, its driver heard a crash but kept on going as above stated. He then stopped, and on returning found that the crash he had heard had been caused by a heavy automobile, in which the plaintiff was riding on the front seat with his chauffeur, hitting the left rear corner of the defendant's truck in trying to pass it while going down the highway in the same direction the defendant's truck had been going. This car had skidded for about 24 feet after the brakes had been applied, and its right front end had hit the truck with sufficient force to move it a few feet and to damage both. The plaintiff's right leg was injured just below the knee.

The plaintiff's evidence was to the effect that he was going from Albany to his home in Meriden, Conn. His car was equipped with proper headlights and brakes in good condition, and was being driven by his chauffeur along the right-hand side of the highway as they came around a curve to the east near the top of the mountain and saw headlights in the road below pointing toward them and somewhat crosswise of the road to their right. The car was then slowed, and when about 50 feet from the vehicle on which they saw the lights its speed was further reduced to 12 miles an hour. As it approached at this speed, it was impossible to see through the beams of light projecting across the road, and at about the time the plaintiff's car went through those beams its speed was brought down to approximately 8 miles an hour. Just as the road ahead became visible, a dark object was seen directly in front, and some men in the road to the left of it in the space between it and the upbound vehicle which had just been passed. The brakes were then applied in an effort to stop, as the men seemed to be in the way of an attempt to swing to the left around the obstruction dead ahead. That, of course, was the defendant's truck, which the plaintiff's car hit as already stated. The evidence of the plaintiff was that there were no lights burning on the defendant's truck. That introduced by the defendant was directly in conflict on this point and was that before the collision two rear lights—one on either side—were lighted, while after the collision the right-hand rear light was still burning; the one on the left side having been broken by the plaintiff's car.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved for a nonsuit and dismissal of the complaint on the ground that plaintiff was guilty of contributory negligence as a matter of law, and on the further ground that he had failed to prove any negligence on the part of the defendant. The verdict was taken subject to a ruling upon these motions, and they were subsequently denied. The defendant requested the court to charge, and was allowed an exception to the denial of its request, that, if the jury found that the defendant's truck was parked on the right-hand side of the road and was lighted at all times, "there was no negligence for which recovery can be had against this defend-

ant." Instead of giving the charge as requested, the court instructed the jury on the subject as follows:

"It might not be negligence at night to park a car at a place where an oncoming automobile could see some distance, if the lights were on the car, or if the car were off the travelled part of the highway. By that I mean, off the concrete on what is called the shoulder. But if a car is parked on a dark night partly on the concrete and part off, or wholly off, without lights, and without any warning signals to approaching automobiles otherwise given, it warrants a reasonable conclusion that it was negligence to park a car in such fashion."

"Now it is hotly disputed in this case where (sic) the lights were on or off. I will not discuss that evidence with you. You have heard it, and you have heard counsel discuss it. So if you find the defendant was negligent—and when I say the defendant, it means the defendant in this case and the acts of his agent or driver of this automobile, or truck, are the acts of the defendant—if you find the defendant was negligent in thus parking or leaving his car on the highway, whatever may have been the object in so doing, then you pass to the question of whether the plaintiff was guilty of contributory negligence."

[1] In so far as the motions were based upon failure of proof that the defendant was guilty of negligence, it is clear that the motions were properly denied. Though the evidence was disputed, there was positive testimony that the defendant's truck was left unlighted on the highway where it was an obstruction to traffic without anything being done to warn approaching cars of its presence. If that was done, the defendant was clearly negligent.

■■ The conduct of the plaintiff certainly made an extremely close question as to his contributory negligence. It was his employee who was driving his car whose negligence, if any, is attributable to him just as is that of the defendant's employees to the defendant. On the undisputed testimony, the plaintiff's car, a heavy limousine, was driven down a slippery highway in the dark right through the beams of the headlights of an approaching vehicle which shot across its path in such a way as completely to shut off the view ahead. And this was done at a speed, whatever it actually was in terms of miles per hour, so great that, when the beams of light were passed and the way ahead could be seen, the car skid-

ded badly in an unsuccessful attempt to make an emergency stop to avoid colliding with the plaintiff's truck. The very fact that the headlight beams of the upbound truck projected across the road should have been warning that the circumstances called for great caution in going down a slippery road right into them. That alone was a circumstance in view of the slippery roadbed, which should have warned the plaintiff and his chauffeur that the upbound vehicle might be having trouble in getting up the grade, and required, if not actual stopping, a reduction in speed to such a point that a stop could be made quickly, if that became necessary. Yet there are so many things in such a situation which enter into what may or may not be prudent conduct that we are more inclined to the opinion that the evidence of contributory negligence was for the jury. There was some evidence that the plaintiff's car was driven down beyond the upbound truck at no more than 8 miles per hour. That is, of course, slow speed at which the brakes will ordinarily stop a car in but a short distance. Whether it was slow enough for due care under existing conditions seems debatable, and for that reason we find no error in denying the motions. Massoth v. Delaware & Hudson Canal Co., 64 N.Y. 524; Grand Trunk R. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Hallett v. Crowell, 232 Mass. 344, 122 N.E. 264; Hatch v. Daniels, 96 Vt. 89, 117 A. 105; Kaufman v. Hegeman Transfer & Lighterage Terminal, Inc., 100 Conn. 114, 123 A. 16.

■ The failure to comply with the request to charge, however, was reversible error. While there was evidence that the defendant's truck was stopped as far to its right side of the highway as to have but 1½ foot in distance between it and the right guard rail, there was also evidence that it was wholly on the right-hand strip of concrete, with no part of it on the shoulder of the road. Even if the latter were so, there were still two strips of concrete to the left, each 10 feet wide, on which overtaking cars might pass. The stopping was caused by the emergency created by the presence in the road ahead of the upbound truck which was slipping on the icy surface in its attempt to make the grade. The defendant's truck driver and his assistant, in going to the aid of the upbound truck, were not only helping that vehicle to get on its way, but were helping to get it out of their

516

own way. They were doing what the circumstances made necessary to enable them to proceed safely on the business of their employer. They continued to throw chains in front of the rear wheels 'of the upbound truck until it 'was past their own and was going on up the hill out of their way. If the lights were burning on their own truck during this time, there was no failure in any duty owed the defendant. There is no claim that any statute of Massachusetts was violated in letting the defendant's truck remain where it was provided its lights were burning, and, if they were burning they afforded reasonable warning, to an automobile approaching, of the presence of that truck. Whether or not those lights were burning was decisive upon the issue of the defendant's negligence and an unequivocal charge that, if they were, "there was no negligence for which recovery can be had against this defendant" should have been given as the defendant requested. Instead of that, the court charged the jury, not that the defendant was without negligence provided the lights on its truck were burning, but to the effect that it "might" not have been negligent if they were burning and was negligent if they were not. The difficulty with the whole submission on this vital point is that the jury, with only a partially correct charge on a decisive feature of the case, was permitted without more to find the defendant negligent "in thus parking or leaving his car in the highway." It would be possible to say that the jury would understand by "thus parking or leaving" the parking or leaving without lights as the plaintiff claimed, though the refusal of the above-quoted request to charge indicates that the court was unwilling so to confine the field of possible actionable negligence on the evidence presented. But it is equally possible to say that a jury would fairly understand from this charge that the defendant might be guilty of actionable negligence whether the lights on the truck were burning at all times or not. We will not speculate as to what meaning the jury did attribute to these instructions. They did not cover the scope of a proper request on a subject which went right to the heart of the case and left it possible for the plaintiff to recover without proving any liability on the part of the defendant at all.

Judgment reversed, and a new trial granted.