## FARRELL v. CAMERON.

No. 6099. Decided October 24, 1939. (94 P. 2d 1068.)

Rehearing denied December 28, 1939.

*Ralph B. Ottenheimer* and *Harley W. Gustin,* both of Salt Lake City, for appellant.

*J. J. Whitaker,* of Salt Lake City, for respondent.

WADE, District Judge.

This is an action by the plaintiff, the respondent here, against the defendant, the appellant here, to recover damages which she claims to have suffered as the result of a collision between the automobile in which she was riding and one owned and driven by the defendant. The action was tried by the court, without a jury, and the following are the material facts found by the court:

"2. That on the 24th day of April, 1937, at the hour of 8 P. M. * * * the plaintiff was a passenger in [an] automobile owned by one Pete Cayias and being * * * driven by him on Highway No. 50 in Magna * * *. That said Cayias was driving said car * * * west on said highway * * * in a careless and negligent manner, in this: That he was driving said automobile with the left wheels thereof from 12 to 16 inches to the left of the center line of said highway. That the defendant at said time and place was driving an automobile east on said highway, in a careless and negligent manner and without due care for the safety of plaintiff and others, in this: That at said place on said highway where he was aproaching the car of Pete Cayias he [the defendant] was blinded by the lights of an on-coming automobile and that, although he observed the Cayias car at a distance of about 100 feet from the same, he nevertheless * * * proceeded along said highway at a rate of speed of approximately 30 miles per hour and failed to slow down or make any effort to avoid colliding with said Cayias car; that by turning slightly to the right he could have * * * avoided said collision, there being ample time and space to do so.

"3. That as a result of the negligent conduct of Pete Cayias, as aforesaid, and the negligent conduct of the defendant * * * the said automobiles were caused to collide, causing plaintiff to be violently thrown against the side of the car * * * thereby * * * causing her great pain and suffering to her damage in the sum of $200.

"4. That * * * the plaintiff was riding as a passenger in said Pete Cayias' automobile, and the injuries which she received therein were not due and were not occasioned by her own carelessness or negligence, but the proximate cause of the injuries which she received was the concurring negligence of the defendant and Pete Cayias."

The findings are not questioned, and unless the judgment, as a matter of law, is not supported by the facts found, then it must stand, and in determining this question we must decide whether under the facts found the defendant was guilty of negligence and, if so, was his negligence the proximate cause of the accident and plaintiff's injuries.

The court failed to find on which side of the road the defendant's car was at the time of the collision. We cannot assume facts against the defendant, and so we will assume that all of his car was on the right side of the center line of the road. The Cayias car being on the left side of the road only from 12 to 16 inches, it must have been some part of the left 16 inches of the two cars which collided in this accident.

The findings do not directly state the speed of the Cayias car at the time of the accident, but the court did find that the defendant had ample time after seeing the Cayias car 100 feet away to turn his car slightly to the right and avoid the collision.

Defendant's counsel argues that this finding is contrary to the facts found. He assumes that the Cayias car was traveling 30 miles per hour, same as the defendant. It would take only 1.136 seconds for the two cars to travel 100 feet, which he contends is not ample time for the defendant to avoid the collision. If it takes .75 second for a normal person to act after observing danger, the defendant would travel 33 feet in that time, and would have 17 feet to go before he would meet the Cayias car. If defendant's car was on the center line when he observed the Cayias car, he would have to move to the right 16 inches to avoid a collision, while he traveled 17 feet forward—which would be

ample. But, if that were not ample, the court did not find that the Cayias car was traveling 30 miles per hour. Plaintiff, however, pleaded that the Cayias car was going only five miles per hour, and if there is any reasonable speed which is consistent with that finding, then this court cannot say that it is erroneous. If the Cayias car was traveling only ten miles per hour, the two cars would travel 40 miles per hour, or 59 feet per second. It would take 1.68 seconds for the two cars to meet, which clearly would give the defendant ample time to turn and avoid the collision.

The findings are also uncertain as to whether the "lights of an on-coming automobile" which blinded the defendant were the lights of the Cayias car or the lights of another automobile. Nor do they state how far the cars were apart when the defendant was so blinded, nor for how long a time he continued to be blinded; nor to what extent he was blinded by said lights. Defendant's counsel states that defendant "was blinded by the lights of the Cayias car"; but the language used by the court seems to indicate that it was the lights of another car. Thus the court, immediately before and immediately after the part above quoted, referred to the Cayias car as "the Cayias car;" but here the court says "an on-coming automobile"; not "the on-coming automobile" and not "the Cayias car." If it was the lights of another automobile, and not the lights of the Cayias car, which blinded the defendant, then the other car must have been ahead of the Cayias car and between it and the defendant's car, and no doubt passed the defendant's car when it was 100 feet from the Cayias car, and therefore those lights would not bother the defendant any more. That is the natural construction to be placed on the language of the court. But, on the other hand, if the lights which blinded the defendant were the lights of the Cayias car itself, then their effect would no doubt continue to some extent from the time the defendant first saw that car until the time of the collision.

When we speak of being blinded by the lights of an on-

coming automobile, what do we mean? How blind is a person who is so blinded? Can he see the road on which he is traveling—or the edge of the pavement, or the shoulder beyond, or the line painted in the center of the road? Can he, if he uses due care, see the position of an on-coming automobile sufficiently to avoid colliding with it? Or is he so blinded that he cannot determine any of these details?

Probably different people are affected differently by automobile lights. A glaring light in the nighttime is very annoying to everyone, and if a driver continues to look directly into the lights he, of course, sees nothing else. On the other hand, if he looks toward the road and at the objects which it is his duty to see, ordinarily he can see. Thus, if the defendant had used due car, the care that an ordinary driver does use, he could have seen the road and the edge of the pavement and the shoulder and the position of the Cayias car and could have avoided the collision.

The trial court found that both Cayias and the defendant were negligent in driving their cars at the time of this accident, and that the negligence of each of them was the proximate cause of the injuries to the plaintiff. It can make no difference in this case which of the two was more negligent. If the defendant was negligent and that negligence was the proximate cause of the injuries, the plaintiff can recover from the defendant, unless she is guilty of negligence herself. The trial court has expressly found that she was not negligent, and that finding is not questioned.

The trial court found that the defendant was negligent—first, in failing to slow down after he had seen the Cayias car, and, second, in failing to turn his car slightly to the right and thereby avoiding a collision.

Was the defendant negligent in failing to slow his car down after seeing the Cayias car? If so, was that negligence the proximate cause of plaintiff's injuries? The defendant was driving approximately 30 miles per hour, which is within the speed limit, and if his rate of speed was negli-

gence it was because of the special circumstances which existed at the time and place of the accident, which caused it to be dangerous for him to drive at that time and place at that rate of speed and not slow his car down after he had seen the Cayias car.

There are two facts which might have existed which would make it the duty of the defendant to slow his car down or stop.

First: If the Cayias car were turning to its right at the time the defendant first saw it, then the defendant, by slowing his car down, would give it the time to move over onto its side of the road and out of the course of the defendant's car, and would thereby have avoided the collision. Clearly, if those were the facts it would have been the duty of the defendant to have slowed his car down to avoid striking the Cayias car, even though the Cayias car was unlawfully on the wrong side of the road. There is however, no finding that the Cayias car was turning to the right at the time of the accident.

Second: If defendant were so blinded by the lights of "an on-coming automobile" that he could not see the objects in front of him, then it was his duty to stop his car as quickly as possible and not proceed until he could see the road. If these were the facts, still there is a serious question as to whether his negligence in failing to slow his car down or stop was the proximate cause of the accident.

If, as stated above, the two cars were traveling at the rate of 30 miles per hour, and it took the defendant .75 second before he could act after seeing the Cayias car, at that point the cars would only be 35 feet apart, and the defendant's car would only have 17 feet to travel before colliding with the Cayias car, and if he had thrown his brakes on the collision would have occurred before his car could be stopped. Slowing his car down would of course have made the collision less violent and would have given the driver of the other car more time to see the defendant's car and to avoid striking it, and the chances would have been greater that

this would happen; but if the Cayias car continued to travel in the same course that it was at the time of the collision, then the accident would have happened in either event, and his failure to slow down would not be the proximate cause of the accident. For cases discussing this question see: *O'Malley* v. *Eagan*, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582, 583; *Clark* v. *King*, 178 Wash. 421, 34 P. 2d 1105; *Burlie* v. *Stephens*, 113 Wash. 182, 193 P. 684. But, regardless of what the law is on that question, if the facts are correctly construed above then the defendant was not so blinded by the lights of the on-coming automobile that he could not see the road and the position of the Cayias car; so that question is not raised in this case.

But the serious question in this case is whether the defendant was negligent in failing to turn his car slightly to his right and thereby avoid a collision.

From the foregoing discussion we deduce the following facts: That the defendant saw the Cayias car approaching when it was 100 feet away, and when its left wheels were from 12 to 16 inches on the left side of the center line of the highway, and at that time he was driving his car within 16 inches of the center line of the highway, so that if they both continued to travel in the course they were then traveling the cars would collide when they met. That, though the defendant at some stage of this event was blinded by the lights of "an on-coming automobile," no matter which way we interpret the findings if he had used ordinary care he could have seen these facts as they existed, and that he then had ample time and space to turn his car slightly to the right and avoid a collision.

Under these facts, was the defendant negligent? In other words, did the defendant, in failing to turn his car slightly to the right, act as an ordinary prudent person would act under those circumstances?

It is contended by the defendant that since the left wheels of the Cayias car were being driven from 12 to 16 inches to the left of the center line of the highway, and it is conceded

the law requires each car to be driven on its right-hand side of the center of the road in passing other vehicles which are traveling in the opposite direction; therefore, the defendant had a right to assume that the driver of the Cayias car would obey this rule and would turn his car to the right sufficient to avoid a collision. The defendant had a right to continue to assume this until he saw or ought to have seen that the driver of the on-coming car did not intend to turn to the right and avoid a collision, and that the defendant had this right to continue to assume that the on-coming car would turn to its right-hand side of the road, until it was too late for him to make the turn, unless he could see that the driver of the on-coming car was asleep or unconscious or so unable to or did not intend to turn his car, and that the mere fact that the approaching car continued to hold its course, without making any move to turn, up to that point where it would be too late for the defendant to make a turn and avoid a collision, is not sufficient to notify the defendant that the driver of the on-coming car did not intend to turn.

We cannot agree with this argument. The defendant could see the on-coming car; could see that if both cars continued in their course there would be a collision. Then the mere fact that the approaching car continued in its course without making any move to turn was sufficient to warn the defendant that the driver of the on-coming car did not intend to turn and that it was his duty to make the turn before it was too late.

On this point, in *Shaw* v. *Wilcox,* Mo. App., 224 S. W. 58, 59, in discussing this question the court said:

"It may be that each of the parties approached too near the other * * * before making any move to avert a collision. Certainly one of the parties did so. The plaintiff's driver says that he was driving about 15 miles per hour, and without slackening his speed came squarely toward and in the pathway of defendant's car till he was within 15 to 20 feet of same, before turning to go round him. It was, however, primarily defendant's duty to seasonably turn to the right and clear the way; but, when plaintiff saw he was not doing this, he

should have put his car under control, and not waited till it was too late to turn aside."

It is our opinion that every driver who is taking reasonable care in driving his car will not stop to consider for even a moment whether the other driver is on his side of the road or not, where, as here, he has ample time and space to do so, but will move over and not take a chance, and avoid a collision. A driver who refuses to turn and avoid a collision under those circumstances, simply because he was on his right-hand side of the road, and the approaching car was slightly on its left-hand side of the road, would certainly be guilty of negligence. It is true that there was always a chance, up until it was too late for the defendant to turn, that the driver of the approaching car would make the turn slightly to the right and avoid a collision, and it is also true that the driver of the approaching car, being on the wrong side of the road, had a greater duty to make this turn than did the defendant. But where, as in this case, the defendant had ample time and space to make the turn, the turn required being so slight that it could not in any way placed defendant in danger or even inconvenience him, and where the risk of collision was fraught with such great possibilities of harm, not only to the defendant himself but also to the driver of the approaching automobile and the other occupants thereof, the court was amply justified in finding the defendant was guilty of negligence.

Counsel for defendant cites Section 57-7-22, Revised Statutes of Utah 1933, which provides:

"* * * the driver of a vehicle shall drive the same upon the right half of the highway;" and "* * * shall drive as closely as practicable to the right hand edge or curb of the highway."

The defendant, at the time of this collision, was driving his car within 16 inches of the center line of the highway, at a point where there was ample space for him to drive enough nearer to the right-hand edge of the highway to

avoid this collision, and therefore he was not driving as near the right-hand edge of the highway as was practicable, and so was violating an express provision of the statute.

The defendant relies on the case of *O'Malley* v. *Eagan*, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582, claiming:

"That the facts in this case and the questions raised thereunder are identical with the facts and questions raised in the case at bar."

But, in the O'Malley case the car in which the plaintiff was riding at the time of the collision was being driven clear over to its outer left-hand edge of the pavement, and the defendant in that case could not turn farther to his right and thereby avoid a collision, because there was a fence only 2½ feet beyond the pavement, and a gulch 18 feet deep just 20 feet ahead, when the defendant saw that the car in which plaintiff was riding was not going to turn to its side of the road, and defendant thereupon turned his car to the left, in a last desperate attempt to avoid a collision, but was too late. Whereas, in the case at bar, the left wheels of the Cayias car were only 12 to 16 inches to the left of the center line of the highway, and when the defendant saw the Cayias car he had ample time and space to turn slightly to the right and avoid a collision.

In the O'Malley case the court held, as a matter of law, that the defendant therein was not negligent in not turning to his left-hand side of the road sooner, because it was his duty to remain on his right-hand side of the road until he could see that the other car was not going to turn to its side of the road, and that in that case he could not see this until it was too late. And it is apparent that where a driver is driving his car on his right-hand side of the road and he meets an approaching car on its left-hand side of the road he is faced with a serious problem. If he turns to his left, in violation of the law of the road, the approaching car is apt to turn to its right at the same time, and then they would both turn into each other. And unless there is something out of the ordinary it would be impossible to say that

the approaching car would not turn to its proper side of the road, and it would never be safe for the car on its right-hand side of the road to turn to its left-hand side, because its driver could not be sure that the driver of the approaching car on the wrong side of the road would not turn to its right side of the road. But, in the case at bar the defendant was not required to turn to his left-hand side of the road or to violate any rule of the road, but merely required to guide his car slightly farther to the right-hand side of the road, so as to avoid colliding with the approaching car. In such a case there is ordinarily no danger in following such a course. So these cases are so different that the court's comment on this point could have no bearing on the defendant's duty in the present case.

The following authorities cited by defendant are discussing cases similar to the O'Malley case, and are distinguishable from the case at bar on that account: *Albright* v. *Joplin Oil Co.*, 206 Mo. App. 412, 229 S. W. 829; Blashfield's Cyclopedia of Automobile Law and Practice, Volume 2 (Perm. Ed.), page 60, § 918; *Goodson* v. *Produce Co.*, 10 La. App. 486, 120 So. 689; *Shaw* v. *Wilcox*, Mo. App., 224 S. W. 58.

Many of the cases cited by the defendant hold that under the circumstances of the case in question it was a question of fact to be determined by the jury, whether the defendant was negligent, and, if so, whether his negligence was the proximate cause of the injuries sustained, and have refused to interfere with the decision of the jury upon that point. See *Bailargeon* v. *Myers*, 180 Cal. 504, 182 P. 37; *Shupe* v. *Rodolf*, 185 Cal. 371, 197 P. 57; *Pinder* v. *Wickstrom*, 80 Or. 118, 156 P. 583; *Carruthers* v. *Campbell*, 195 Iowa 390, 192 N. W. 138, 28 A. L. R. 949.

The case at bar was tried by the court, without a jury, and the court has made its findings of fact as above stated. The court having found the facts against the defendant and

having concluded as a matter of law and fact, that the defendant was negligent, and that his negligence was one of the proximate causes of plaintiff's injuries, its findings are entitled to the same weight as the decision of a jury on those questions. See *Yellow Cab Co.* v. *Carlsen,* 211 Ill. App. 299.

Other cases cited by the defendant simply hold that where a person is driving on his right side of the road and sees another vehicle approaching from the opposite direction he is not negligent for failing to stop his car or for failing to turn to the right or to the left, where the approaching car turns suddenly into his side of the road without giving any warning of his intention to do so, and that in such case the sudden turn of the approaching vehicle is the sole proximate cause of the accident and the injuries sustained. See *Curry* v. *Williams,* 109 Cal. App. 649, 293 P. 623; *Burlie* v. *Stephens,* 113 Wash. 182, 193 P. 684; *Clark* v. *King,* 178 Wash. 421, 34 P. 2d 1105.

On the other hand, there are many authorities, and we have found none to the contrary, which hold that where an automobile which is being driven on its right-hand side of the street is approaching another automobile which is being driven in the opposite direction and on its left-hand or wrong side of the street, it is the duty of the driver who is on his right-hand side of the street to use reasonable care to avoid a collision, even if the approaching car is being driven, in violation of the law of the road, on the wrong side of the street.

In 1 Berry on Automobiles, 6th Ed., 842, Sec. 995, it is said:

"A motorist on the right side of the road must exercise reasonable care to avoid a collision with a car on the wrong side."

In *Carruthers* v. *Campbell,* 195 Iowa 390, 192 N. W. 138, 139, 28 A. L. R. 949, the court said:

"In this case the jury could properly find that plaintiff was on the right side of the road. This would not, of course, justify him in failing

to use reasonable care to avoid a collision with defendant, even though the latter were on the wrong side, but whether he was negligent in this respect was quite clearly a jury question."

In 42 C. J. 942, Sec. 657, it is said:

"* * * A driver is not, however, entitled to insist on his right to a full half of the traveled portion of the road regardless of consequences, but even though another encroaches on his side of the road he should avoid the danger by turning further to the right if it is practicable to do so, and such a course would be dictated by reasonable care and prudence. * * *"

And Section 665 says:

"A person who is operating a vehicle along a highway on his own right-hand side of the road has a right to assume that the person in charge of a vehicle approaching in the opposite direction will observe the rule of the road * * * and that a vehicle approaching on the wrong side of the road will turn to its own right side of the road in time to avoid danger. He is not entitled, however, to rely on the latter assumption after he sees, or should see, that it is unwarranted and that the approaching vehicle will not change its course * * * and under such circumstances it becomes the duty of the driver who is on his own right side to use reasonable care to avoid the impending collision by turning further to the right. * * * *"

In *Thomson* v. *Schirber*, 164 Wash. 177, 2 P. 2d 664, at page 665, the court said:

"While, of course, the respondent had the right to assume that the driver of the automobile approaching from the east would exercise due care and steer his car on to that driver's right-hand side of the highway, the respondent could not for that reason omit any of the care the law required of him. Certainly the respondent would not be authorized by reason of the fact that appellants' automobile was on the wrong side of the highway to run down that automobile. The respondent would be required under such circumstances to exercise the care of a prudent man for the purpose of avoiding an accident."

See also *Shupe* v. *Rodolf*, 185 Cal. 371, 197 P. 57, and *Shaw* v. *Wilcox*, Mo. App., 224 S. W. 58.

It is contended by the defendant that even though, under the circumstances of this case, he was required to use reasonable care to prevent an accident, still, when the driver of the car in which the plaintiff was riding drove onto the left-hand side of the road, the defendant was thereby confronted with immediate danger by reason of the negligence of the driver of the approaching car and, under such circumstances, he is not required to use the same judgment as he would be if he were not in such danger, and for that reason it is urged that this judgment should be reversed. It is true that where the driver of an automobile is confronted by danger which requires immediate action, and such danger is caused by the negligence of someone else, and he is free from negligence in respect thereto, he is not held to the same degree of care or required to use the same judgment in the action which he takes under those circumstances as where he is not confronted by such danger, but he is only required to use the care of an ordinary prudent person under the existing circumstances. And if this case had been tried by a jury an instruction to that effect would have been proper. But here the court has decided both questions of law and fact, and has concluded, as a matter of law and fact, that the defendant did not use reasonable care under the circumstances. We are clearly of the opinion that this court cannot say, as a matter of law, that the defendant was not guilty of negligence.

In *Shupe* v. *Rodolf*, 185 Cal. 371, 197 P. 57, the court said:

"* * * the defendants were proceeding a little to the left of the center line of the way, as they were going, and the plaintiff was several feet to the right as he was going. As the two vehicles approached close to each other, the defendants turned still further to their left, and the plaintiff turned to his right so that the two met. * * *

"The contention that the plaintiff was guilty of contributory negligence is rested upon the fact that the evidence showed that at the time of the collision there was an open space of at least 6 feet between the car of the defendants and the curb on its left, that the plaintiff * * * could have turned his machine still further to the right and

passed the defendants in the open space mentioned. * * * It may be that the plaintiff, if he had turned more quickly to the right, might have avoided the collision. * * * The point is that, when the defendants' car started to turn to the left, the plaintiff was confronted with a situation of imminent danger requiring instant action, and there may have been no negligence on his part in taking the action he did, although if he had done something else he would have escaped. * * *

"Whether under the circumstances here presented the plaintiff did what he reasonably could to avoid the collision is very apparently a question about which there might be a reasonable difference of opinion. Such being the case, the answer to the question was exclusively within the province of the jury, and we cannot disturb their conclusion."

The above case is similar to the case at bar, in that it was contended that the driver who was on his own right-hand side of the road was guilty of negligence because he failed to turn more to the right to avoid a collision with a car that was on its left-hand side of the road; but in the case cited the driver who was on the wrong side of the road turned still further to the left, and the court, as above set out, held that under those circumstances it could not be said as a matter of law that the plaintiff was negligent but it was a question of fact for the jury, in view of the fact that the defendants, who were on the wrong side of the road, turned still further to the left and thereby confronted the plaintiff with a situation of imminent danger, requiring instant action. The court thus intimates that if the defendants had not turned still further to the left, but had held their course, as in the case at bar, and the plaintiff had failed to turn at all to the right, he would have been guilty of contributory negligence as a matter of law. If it was a question of fact in the case cited, it is much more so a question of fact in the case at bar, and, the court having concluded as a matter of law and fact that the defendant was negligent, that finding cannot be disturbed.

This brings us to the last question: Can this court say, as a matter of law, that the negligence of the defendant was not the proximate cause of the injuries to the plaintiff?

Proximate cause is that cause which, in natural or continued sequence, unbroken by any new, intervening, efficient cause, produced the result complained of, and without which the damage would not have been sustained.

Considering each element separately: Without the negligence of the defendant, the damage to the plaintiff would not have been sustained. In other words, if the defendant had steered his car 16 inches to the right this accident would not have happened. The negligence of the defendant; that is, his failure to steer his car 16 inches further to the right, was the cause which, in natural and continued sequence, produced the result complained of. That is clearly so, because the only natural result from two cars driving towards each other is a collision, and the negligence of the defendant continued right up to the time of the collision. And this cause was not broken by any new, intervening, efficient cause. While it is true that there was another cause—that is, the negligence of the driver of the Cayias car, which also caused this accident, still it was not a new cause. It existed all the time that the negligence of the defendant did, and was concurrent and simultaneous with it. And it was not an intervening cause. The only reason that could possibly be advanced for contending that the negligence of the defendant was not the proximate cause of this collision is that the driver of the car in which the plaintiff was riding was more negligent than the defendant. This does not, however, prevent the negligence of the defendant from being the proximate cause of the accident.

There being no error, the judgment is therefore affirmed. Plaintiff to recover costs.

MOFFAT, C. J., concurs.

PRATT, Justice (concurring).

In concurring in this decision, I do so upon the theory advanced therein, that even though one driver is upon the

wrong side of the road, the approaching driver who is on his proper side, is not relieved of the duty of exercising reasonable care to avoid a collision. The latter may assume that the former will resume his proper side, but that assumption, of course, does not remain with him indefinitely. There may come the time when a reasonably prudent person would realize that he, who is on the wrong side of the road, is not going to resume his proper position. If, when this realization should arise in the mind of the driver approaching upon his proper side of the road, he, through inability to see, or by reason of speed, is unable to exercise control of his car, then he is negligent; and where the circumstances are such that had he controlled his car as a reasonably prudent person would have done, he could have avoided the collision, then his negligence was a proximate cause thereof. I cite the case of *Angelo* v. *Esau,* Cal. App., 93 P. 2d 205, a California case, as giving some good law upon this point.

I think this is the theory of the lower court's findings. They should be affirmed.

WOLFE, Justice (dissenting).

Since there is no bill of exceptions on this appeal the only facts before this court are those in the findings of the district court. It is urged by appellant that these findings will not support the judgment against the defendant appellant. The pertinent facts appear in Finding No. 2. The prevailing opinion holds the findings sufficient. To me they seem insufficient for two reasons:

1. The finding does not state that at the time defendant saw Cayias's car 100 feet distant he observed that the left wheels of said car were 12 to 16 inches to the left of the center line of said highway; neither does it state that the defendant should have observed that the wheels of Cayias's car were over the center line. It is elementary that Cayias's car, being over the line, could not give rise to a duty in defendant to turn out for him unless the defendant either ob-

served the position of the Cayias car or should have observed it. It does not appear from the finding that defendant came under any duty to turn out. It is found that Cayias was on the wrong side of the road. But this collision occurred at night when headlights were necessary to highway visibility. It does not appear that the highway was straight in the vicinity of the collision, and if it were not it would be difficult to determine whether an oncoming car was on the right or the left side of the road. It should not, therefore, be assumed that the defendant observed that the Cayias car was on the wrong side of the road, and without such finding or assumption no duty could have arisen, at the earliest, until defendant had such notice. *Cook* v. *Standard Oil Co.*, 15 Ala. App. 448, 451, 73 So. 763; Blashfield, Cyclopedia of Automobile Law, Permanent Edition, Volume 2, page 57, § 914.

2. Both the findings of fact and the prevailing opinion imply that a duty in the defendant to turn farther to the right arose the instant defendant saw Cayias's car. Such is not the law. One who drives on the right side of the highway is entitled to assume, when he sees an oncoming driver on the wrong side of the road, that the other will return to the proper portion of the highway and thereby avert a collision, if there is ample opportunity to do so and nothing to apprise him that the oncoming driver has no such intention. *Baker* v. *Zimmerman*, 179 Iowa 272, 161 N. W. 479; *Travers* v. *Hartmann*, 5 Boyce 302, 28 Del. 302, 307, 92 A. 855; *Whitworth* v. *Riley*, 132 Okl. 72, 269 P. 350, 59 A. L. R. 584, 587; *Paton* v. *Stealy*, 272 Mich. 57, 261 N. W. 131; *James* v. *Caroline Coach Co.*, 207 N. C. 742, 178 S. E. 607; *Clark* v. *Southwestern Greyhound Lines*, 148 Kan. 155, 79 P. 2d 906; *Kress* v. *Roush*, 50 Ohio App. 376, 198 N. E. 491; Berry on Automobiles, 6th Ed., 240. The rule is frequently coupled with its corollary that this assumption becomes inoperative when it appears that the oncoming driver cannot or does not intend to return to his right side of the road, and the other driver was aware or should have been aware of that fact in

time to avoid the accident. *Luther* v. *Pacific Fruit & Produce Co.*, 143 Wash. 308, 255 P. 365, 367; *Stuart* v. *McVey*, 59 Idaho 740, 87 P. 2d 446; *Hatch* v. *Daniels*, 96 Vt. 89, 117 A. 105; *Cook* v. *Standard Oil Co.*, supra; Blashfield, Cyclopedia of Automobile Law, Permanent Edition, Volume 1, page 586, § 787, Id., Volume 2, page 60, § 919; Huddy, Cyclopedia of Automobile Law, Vol. 3-4, p. 187.

The Vermont court in *Hatch* v. *Daniels*, supra, thus stated the rule at pages 93, 94 of 96 Vt., 117 A. at page 107:

"One thus driving an automobile along a public highway, who sees a car approaching on the wrong side of the road, has, at the outset, a right to assume that it will observe the law of the road (G. L. 4705), and seasonably move over to its right so as to pass without interference; and he may proceed on this assumption until he sees, or in the circumstances ought to see, that it is unwarranted. * * * But this presumption must not be persisted in after the actor knows facts showing that it will not be true. So when this plaintiff saw, or ought to have seen, that this car would not get out of his way, he was bound to look out for himself, and to exercise the care of a prudent man, not only to avoid injuring others, but also to protect himself from injury."

Blashfield states the rule and supports it with authorities, as follows (Permanent Edition, Volume 2, page 60, § 919):

"A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving * * *.

"These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars or highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by due care he discovers that

another on the wrong side of the street cannot or will not himself turn to the right to clear his way."

Other cases make plain the rule that a duty to turn farther to the right or off the road does not arise immediately upon seeing an oncoming car on the wrong side of the road, but only after it appears, or would appear to a reasonable man, that the oncoming car cannot or will not so remedy its course as to avoid collision. *O'Malley* v. *Eagan*, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582, 592; *Dircks* v. *Tonne*, 183 Iowa 403, 406, 167 N. W. 103; *Sumner Co.* v. *Fisher*, 28 Ohio App. 219, 162 N. E. 639; *Albright* v. *Joplin Oil Co.*, 206 Mo. App. 412, 229 S. W. 829. As to the point at which the duty to attempt to avoid the car which is on the wrong side arises, see *Hatch* v. *Daniels*, supra; *Sumner Co.* v. *Fisher*, supra; *O'Malley* v. *Eagan*, supra; *Whitworth* v. *Riley*, supra; *Dircks* v. *Tonne*, supra.

In *O'Malley* v. *Eagan*, supra [43 Wyo. 233, 2 P. 2d 1068, 77 A. L. R. 582], the court quoted and applied the rule laid down in the Albright case, as follows:

"The fact, therefore, of itself that the deceased was in the street, on the wrong side thereof, when there was no appearance of his being oblivious to the oncoming truck, would not place a duty on the driver of the truck to slacken his speed or change his course, so long as he was on the right side of the street, where he belonged, and within the law and the traffic rules, until he reached a place where it was apparent to the driver of the automobile that the deceased was unconscious of his oncoming danger, or, although duly alive to the danger, he was unable to get to a place of safety."

Blashfield also states (Permanent Edition, Volume 1, page 586, § 787):

"The driver who is on the right side may assume, on the first appearance of the other vehicle, that it will change its course, and the particular point of time when he is no longer warranted in indulging such assumption is for the jury in an action for injuries resulting from a collision."

Thus it is apparent that the district court applied the rule of duty wrongly; its findings assume that a duty to avoid the oncoming driver arose immediately upon seeing him, whereas at that time the defendant was entitled to assume that Cayias would move, and the duty to try to avoid him arose only after it became reasonably apparent that Cayias could not or did not intend to get off the wrong side of the road. On a new trial the question when that notice became chargeable to defendant should be resolved by instructions if tried to a jury and by a finding of fact if to the court.

There is, of course, no absolute right in a driver of an automobile to continue on the right side of the road in disregard of approaching drivers who are on the wrong side. All rights are relative. All drivers owe a duty of being heedful. So if a driver on the right side drives heedlessly or deliberately into a car on the wrong side of the road, such an act constitutes at least negligence. *Rice* v. *Lowell Buick Co.,* 229 Mass. 53, 118 N. E. 185; *Hoover* v. *Reichard,* 63 Pa. Super. 517; Blashfield, Cyclopedia of Automobile Law, Permanent Edition, Volume 2, page 41, op. cit., § 897. But there is no finding that defendant drove deliberately or heedlessly into Cayias or in disregard of him; and in the absence of such a finding the judgment cannot be upheld on such a theory.

Just why the court found that defendant was blinded by the lights of an oncoming car is not plain, since the judgment was still for the plaintiff. The very fact that he was blinded by those lights might be the reason that he did not *realize* that the Cayias car was so close or that it was not going to resume its right lane. For aught that appears the very fact of blinding lights may have been the reason he could not ascertain that the Cayias car was on the wrong side of the road. There is nothing in the finding which shows that Cameron did or should have seen the Cayias car partially on the *wrong* side of the road. A finding that Cameron saw the car at 100 feet is *not* a finding express or implied

that he saw it partially on the wrong side of the road. All of us at night see cars coming toward us on the road yet that fact alone does not show that we saw any one of them on the wrong side, even coupled with the evidence that such car was partially on the wrong side. And if Cameron did not see the Cayias car on the wrong side of the road the only way the finding can be sustained is to hold that he not only had the duty to turn out and save the plaintiff from the results of Cayias's negligence but had the duty of so driving his car even while on his own side and against lights so as to discover oncoming cars on the wrong side of the road. This seems to me to be stretching *Dalley* v. *Midwestern Dairy Products,* 80 Utah 331, 15 P. 2d 309, to an intolerable extent. It would be holding that a driver had the duty to slow down until complete visibility was restored in order to discover whether there were cars partially on the wrong side of the road. Then if he discovered any it would be his further duty to watch the over-lapping car to determine whether it could or in all probability would resume its right lane.

The duty to slow down to such speed as will allow the car to be stopped within the distance in which its lights reveal objects in its path, as I understand it, is a rule of speed in respect to objects or persons which may be on the road and does not relate to the general duty of driving with care in respect to objects already revealed. I cannot agree that drivers who are on their own side of the road, who are partially blinded by lights of oncoming cars and thus occupied greatly in keeping in their own lane have the duty to slow down until they can discover whether oppositely moving cars are on the wrong side. If all cars, in moving fairly close together in oppositely moving processions, are compelled to slow down to a point where they must make sure, because of impaired visibility due to the oppositely moving lights, that such oppositely moving cars were on their own side of the center line, traffic would be impeded to an intolerable extent. This only more forcibly illustrates why a driver occupied under such conditions with keeping in his own lane

may assume that oncoming drivers are doing the same and will remain in their lane.

All that Mr. Justice PRATT states in his concurring opinion regarding the law is freely admitted. But the opinion does not seem to consider the real point in the case to wit: that the findings nowhere state that the conditions were such that Cameron should have realized that the Cayias car was not going to resume its proper position. There is nothing in the findings from which it could be inferred that the "time had come when a reasonably prudent person would realize that he, who is on the wrong side of the road, is not going to resume his proper position." If a finding that Cameron saw the car does not include a finding where he saw or should have seen it in relation to the middle line, how can a duty arise to realize that it would not return to its own side? A duty of one to turn to the right to avoid collision arising after one did realize or should have realized that another could not or would not resume his proper position, of course, must be conditioned on the fact that such one knew or should have known such other was out of proper position. The findings are insufficient to show the duty. Furthermore, even if we can imply from the findings that Cameron not only saw the Cayias car but saw it partially on the *wrong* side of the road, the fact that he observed the Cayias car 100 feet away was not sufficient to show that a prudent man should have realized that the Cayias car would not resume its right position. Otherwise a finding that he saw it 2000 feet away might be sufficient.

Since the findings of fact do not support the judgment, the judgment should be reversed and a new trial awarded in pursuance of defendant's motion therefor.

LARSON, J., dissents.

McDONOUGH, J., being disqualified, did not participate herein.